[NOT FOR PUBLICATION] [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

 

No. 97-1187

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 ERIC GRAY SNYDER,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge] 

 

 Before

 Selya, Circuit Judge, 

 Campbell, Senior Circuit Judge, 

 and Boudin, Circuit Judge. 

 

 Victoria L. Nadel for appellant. 
 James F. Lang, Assistant United States Attorney, with whom 
Donald K. Stern, United States Attorney, was on brief, for the 
United States.

 

 January 29, 1998

 

 SELYA, Circuit Judge. A jury found defendant-appellant SELYA, Circuit Judge. 

Eric Gray Snyder guilty of being a felon in possession of a

loaded firearm, in violation of 18 U.S.C. 922(g)(1). Snyder

appeals. We affirm his conviction.1

 The appellant has cultivated a hothouse of issues.

Some are hardier than others. We address seven of them,

rejecting the remainder all of which are patently meritless 

without editorial comment. We discuss the facts of the case,

insofar as necessary, in connection with our discussion of

particular issues.

 1. The Events of January 8-10. The appellant's 1. The Events of January 8-10. 

principal Fourth Amendment claim is that the Boston police lacked

reasonable suspicion to detain him on January 8, 1995, and

likewise lacked probable cause to arrest him on January 10, or to

search a locked briefcase in the trunk of his car coincident with

the arrest. On this basis, he contends that the district court

erred in refusing to suppress evidence obtained during and after

the stop, arrest, and search. We review de novo the trial

court's determinations of reasonable suspicion and probable

cause, but defer to the trial court's subsidiary findings of fact

(accepting those findings unless they are clearly erroneous).

See United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997). 

 The governing legal standards are familiar. "[A]

  

 1In a separate cross-appeal, No. 97-1233, the government
challenges the district court's leniency in sentencing. The two
appeals were consolidated for purposes of oral argument, but we
have elected to write a separate opinion for each.

 2

police officer may in appropriate circumstances and in an

appropriate manner approach a person for purposes of

investigating possibly criminal behavior even though there is no

probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 

(1968). Such an investigatory stop requires only reasonable

suspicion, based on "specific and articulable facts," id. at 21, 

that, viewed through the eyes of a prudent police officer,

warrant the intrusion. Like reasonable suspicion, "probable

cause is a fluid concept turning on the assessment of

probabilities in particular factual contexts." Illinois v. 

Gates, 462 U.S. 213, 232 (1983). This "totality-of-the- 

circumstances" approach "recognize[s] the value of corroboration

of details of an informant's tip by independent police work."

Id. at 241. 

 We need not dwell on the events of January 8. It

suffices to say that the district court's findings, made after a

three-day evidentiary hearing, are plainly supportable. The

record, fairly read, conduces to a finding that the police

protagonist, Officer Doogan, had reasonable suspicion, based on

specific and articulable facts, sufficient to justify a

relatively brief detention.

 While we dwell at greater length on the events of

January 10, we are satisfied that a m lange of adequately

corroborated information and circumstances generated the probable

cause necessary for Doogan to arrest Snyder and search his

vehicle on that date. We explain briefly.

 3

 Snyder was not a stranger to Doogan, who had some prior

suspicions about Snyder's involvement in nefarious activities (as

witness the detention of January 8). Doogan had learned, by way

of a tip from an unnamed informant, that on January 9, Snyder,

driving a black Honda, had been in possession of a briefcase

containing a handgun.2 On January 10, Doogan received a page

from John Hawk, an informant who had occasionally worked for him

in the past. Doogan telephoned Hawk, who reported that Snyder

had just robbed him at gunpoint, stolen a quantity of Valium

tablets, and sped off in a black Honda accompanied by a known

criminal (Diaferio). Hawk also said that the men were heading

for Roslindale. Doogan knew that Diaferio lived at 17 Murray

Hill Road, Roslindale, a known drug haven that had figured in the

January 8 detention. Believing that the men were likely to turn

up at 17 Murray Hill Road, Doogan arranged a police surveillance

at that address. Shortly thereafter, Snyder arrived, driving a

black Honda and accompanied by Diaferio. He parked the car on

the street. At this point, the police had enough information in

support of Hawk's report to establish probable cause that Snyder,

a previously convicted felon, had committed a crime and that he

possessed not only the avails of the robbery but also a handgun.

 The officers converged on Snyder and Diaferio, frisked

the two men, and found no weapons. They then searched the black

  

 2Another detective passed this tip to Doogan, having
garnered it from an informant who worked with the federal Bureau
of Alcohol, Tobacco, and Firearms and the Massachusetts State
Police.

 4

Honda. The vehicle's trunk yielded a briefcase. Doogan shook

the briefcase and felt something heavy inside it. When Doogan

pried open the corner of the locked briefcase, he saw what

appeared to be a gun. Doogan then forced the lock open and

confiscated a fully loaded Colt semi-automatic .32 caliber

pistol. The police arrested Snyder and took him into custody. A

later search of his person at the station house turned up 26

Valium tablets in his pants pocket.

 The search was lawful. Snyder parked his car on a

public highway. A warrantless search is justified even in the

case of a stationary vehicle parked on a public road based on its

inherent mobility and the reduced expectation of privacy afforded

to vehicles. See California v. Carney, 471 U.S. 386, 392-93 

(1985). Thus, under a recognized exception to the Fourth

Amendment, a police officer may search such a vehicle without a

warrant if there is probable cause to believe that a crime has

been committed and that contraband or evidence of illegal

activities will be found there. See Carroll v. United States, 

267 U.S. 132, 153-54 (1925); United States v. Panitz, 907 F.2d 

1267, 1271 (1st Cir. 1990). By the same token, a diminished

expectation of privacy extends to personal property within an

automobile. If the police have probable cause to search a car,

they also may inspect the interior of any closed container within

it that reasonably might be thought to contain a proper object of

the search. See California v. Acevedo, 500 U.S. 565, 579-80 

(1991); United States v. Ross, 456 U.S. 798, 823 (1982). 

 5

 These principles are dispositive here. As previously

indicated, Officer Doogan had probable cause to believe that a

crime had been committed and that a search of the Honda likely

would produce evidence of it (i.e., the Valium tablets and the

gun). It follows that Doogan had a right not only to search the

Honda for the gun, but also to search the briefcase for it.

Accordingly, the district court did not err in denying the

appellant's motion to suppress.

 2. Sufficiency of the Evidence. The appellant 2. Sufficiency of the Evidence. 

challenges the sufficiency of the government's proof, arguing

that the evidence adduced cannot support a finding that he

knowingly possessed the firearm. This argument is procedurally

defaulted. See United States v. Neal, 36 F.3d 1190, 1206-07 (1st 

Cir. 1994) (holding that grounds not urged below in support of a

motion for judgment of acquittal are deemed waived on appeal).

There is, of course, an exception for convictions that are

"clearly and grossly unjust," id. at 1207, but that exception 

does not apply here.

 Leaving procedural default to one side, the standard by

which sufficiency challenges are reviewed is straightforward:

 An appellate court plays a very circumscribed
 role in gauging the sufficiency of the
 evidentiary foundation upon which a criminal
 conviction rests. The court of appeals
 neither weighs the credibility of the
 witnesses nor attempts to assess whether the
 prosecution succeeded in eliminating every
 possible theory consistent with the
 defendant's innocence. Instead, its task is
 to canvass the evidence (direct and
 circumstantial) in the light most agreeable
 to the prosecution and decide whether that

 6

 evidence, including all plausible inferences
 extractable therefrom, enables a rational
 factfinder to conclude beyond a reasonable
 doubt that the defendant committed the
 charged crime.

United States v. Noah, 130 F.3d 490, 494 (1st Cir. 1997) 

(citations omitted). The evidence in this case easily passes

muster under the Noah test. After all, the standard demands that 

a reviewing court resolve all credibility conflicts in a manner

compatible with the verdict. See United States v. Santiago, 83 

F.3d 20, 23 (1st Cir. 1996). Here, a rational jury could have

chosen to believe Hawk and therefore could have found not only

constructive possession, but also actual possession.

 3. Exculpatory Evidence. The appellant says that the 3. Exculpatory Evidence. 

government failed to disclose certain exculpatory evidence, in

violation of its duty under Brady v. Maryland, 373 U.S. 83, 87 

(1963). This contention was never raised in the district court;

and, moveover, the record indicates that the evidence in question

in fact was made known to the appellant before or during the

trial. Consequently, his complaint is for delayed disclosure,

rather than non-disclosure, and he has utterly failed to show any

prejudice stemming from the delay. The claim of error therefore

fails. See United States v. Sepulveda, 15 F.3d 1161, 1178 (1st 

Cir. 1993).

 4. Jury Instructions. The appellant calumnizes the 4. Jury Instructions. 

district court's instruction to the jury on constructive

possession. The challenged instruction is virtually identical to

that which we criticized in United States v. Booth, 111 F.3d 1, 2 

 7

(1st Cir. 1997). Here, like in Booth, the defendant interjected 

no contemporaneous objection to the instruction, and our review

is for plain error. See id. 

 In Booth, we concluded that the language used, though 

infelicitous, did not require reversal. We reach the same

conclusion here. Taking the charge as a whole, see United States 

v. Weston, 960 F.2d 212, 216 (1st Cir. 1992), and weighing the 

strength of the government's case a case which, in our view, is

stronger than that presented in Booth we find that any error in 

the constructive possession instruction was harmless.

 5. The Summation. The appellant accuses the 5. The Summation. 

prosecutor of committing three sins in the course of closing

argument: improper vouching; commenting upon the defendant's

right to remain silent; and commenting upon facts not in

evidence. The appellant's trial counsel did not object to any of

the remarks and for good reason. While all three practices are

to be condemned, none of them occurred here. We add only that a

defendant who fails to lodge a contemporaneous objection to the

prosecution's summation is in a perilously poor position to

complain that a seemingly appropriate comment conceivably could

have been taken by jurors in some other (improper) way. See 

United States v. Lilly, 983 F.2d 300, 307-08 (1st Cir. 1992). 

 6. Estrella. During the sentencing phase, the 6. Estrella. 

district court applied this court's recent decision in United 

States v. Estrella, 104 F.3d 3, 5-8 (1st Cir. 1997), when ruling 

that Snyder's prior criminal record rendered him subject to the

 8

provisions of the Armed Career Criminal Act. The appellant asks

us to reconsider Estrella, but offers no new reasons for doing 

so. We have held before, and today reaffirm, that prior panel

decisions are binding upon newly constituted panels in the

absence of supervening authority. See United States v. Objio- 

Sarraff, 108 F.3d 421, 421 (1st Cir. 1997) (per curiam); United 

States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995); United States 

v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991). The district 

court appropriately followed Estrella in this instance, and we 

are unable to reexamine Estrella's holding at this time.3 

 7. Ineffective Assistance. The appellant presses a 7. Ineffective Assistance. 

claim, which he did not advance below, that trial counsel's

performance was constitutionally deficient. Such claims

ordinarily are fact-based and, with rare exceptions, will not be

heard for the first time on direct appeal. See United States v. 

Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (listing representative 

cases). The appellant's challenge is factbound and there is no

basis for deviating from the usual rule. Thus, we dismiss this

aspect of the appeal without prejudice to the appellant's right

to renew the claim on a petition brought pursuant to 28 U.S.C. 

2255.

 We need go no further. From aught that appears, the

  

 3Subsequent to oral argument of this appeal, the Supreme
Court granted certiorari in Caron v. United States, 66 U.S.L.W. 
3444 (U.S. Jan. 9, 1998) (No. 97-6270). The Court's answer to
the question certified in Caron possibly could require us to 
reexamine Estrella. We will deal with this possibility in the 
opinion resolving the government's cross-appeal.

 9

appellant was fairly tried and lawfully convicted. The judgment

of conviction (but not the sentence) will therefore be

Affirmed. Affirmed. 

 10