UNITED STATES of America,
Appellee,

v.

Chaim HOLLENDER, also known as Jeff Hollender, Moses Weiss, Kalmen Eisenberg, Moses Perl, Hershber Hirsch, Yishroal Leibowitz, also known as Isaac Leibowitz, Cheskel Samet, Yuda Weiss, David Herskovitz, Yehuda Steinberg, Joseph Jacob, Aaron Solinsky, Mordechai Samet, Defendants,

Chaim Wiesel, Defendant–Appellant.

Nos. 02–1720(L), 03–1196.

United States Court of Appeals,
Second Circuit.

Jan. 14, 2004.

788

Nathan Z. Dershowitz, Dershowitz, Eiger & Adelson, P.C., New York, N.Y., for Appellant.

Cathy Seibel, Assistant United States Attorney, Southern District of New York, NY, for Appellees.

Present: MESKILL, POOLER, and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be **AFFIRMED.**

Defendant Mordechai Samet ("Samet") and his co-conspirators were engaged in a massive effort to defraud numerous individuals, businesses, banks, financial institutions and governmental entities. The as-

pect of this scheme most pertinent here involved Samet and others taking advantage of a tax relief program that provided an "earned income credit" ("EIC") for low income taxpayers. In March 2000, Defendant Hershber Hirsch ("Hirsch"), on behalf of Samet, approached Wiesel, a self-taught tax preparer who had recently become authorized by the IRS to e-file other individual's tax returns, to e-file prepared tax returns for 1999. Weisel e-filed 102 tax returns between March–May 2000, charging $10 per return and earning approximately $1000 total. These tax returns were highly suspicious. For example, every one of the 102 returns (1) claimed head-of-household status; (2) (all but two) claimed two dependents; (3) claimed an earned income credit refund; (4) claimed a refund in the range between $2,304 and $2,368; (5) claimed an adjusted gross income ("AGI") between $9,386 and $9,944; and (6) claimed to be self-employed.

A few months later, Wiesel was retained by Hirsch and Samet to research the availability of refundable tax credits in five other states. In December 2000, Samet and Hirsch retained Wiesel to incorporate eight companies, for which Wiesel charged his usual fee of $265 per company. Information about these corporations was also suspicious. For example, four of these companies were purportedly headquartered at the same address and although these companies were allegedly Samet's businesses, he was not listed as a principal, incorporater, or officer. In late 2000 and early 2001, Wiesel was retained by Hirsch and Samet to prepare hundreds of W–2s and 1099 forms for the supposed employees of these eight corporations. The W–2s prepared by Wiesel were later used by Samet to prepare fraudulent tax returns for 279 taxpayers for tax-year 2000.

The W–2s and 1099 forms prepared by Wiesel also contained suspiciously similar information. For example, 98 of the 102 taxpayers for whom Wiesel had e-filed 1999 returns roughly 9 months prior, all of whom had previously claimed to be unemployed, were now employed by one of Samet's companies. Four companies each had approximately 60 employees. Further, all of the employees had similar, and conveniently round, incomes. For example, the W–2s of all the employees of "SHF Associates, Inc." had incomes of $785, $855 or $890. The W–2s of all the employees of "KAA Service, Inc." had incomes of either $795, $840 or $875. The W–2s of all the employees of "MMM Influence, Inc." had incomes of $790, $870 or $915.

On March 29, 2001, Wiesel was arrested and interviewed by an IRS Special Agent. During this interview, he gave false answers in response to inquiries regarding his tax preparation business. At trial, Wiesel was tried alone and did not dispute the fact that Samet had engaged in an extensive tax fraud. Instead, he argued only that he did not knowingly participate in Samet's scheme. On June 20, 2002, Judge McMahon convicted Wiesel on all four counts in the indictment that implicated Wiesel. At sentencing, the court applied a two-level enhancement for use of a special skill pursuant to U.S.S.G. § 3B1.3. This appeal follows.

Wiesel argues on appeal that there was insufficient evidence supporting the district court's finding that he consciously avoided learning about the unlawful nature of Samet's scheme. "Although the sufficiency of the evidence is reviewed *de novo,* the Court views the evidence in the light most favorable to the government and draws all inferences in favor of the government. The conviction must be affirmed if any rational trier of fact could have found the essential elements of the crime."

*United States v. Henry,* 325 F.3d 93, 103 (2d Cir.2003) (quotation marks and citations omitted). A finding of conscious avoidance may be appropriate "where a defendant has claimed lack of some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance." *United States v. Lanza,* 790 F.2d 1015, 1022 (2d Cir.1986).

■ Here, the district court correctly found that Wiesel assisted Samet's tax fraud scheme by incorporating eight of Samet's companies and creating fictitious W–2s "while consciously avoiding its wrongful nature" because numerous factors should have made Wiesel aware of the unlawful nature of his conduct. Ninety-eight of the 102 taxpayers for whom Wiesel had e-filed tax returns approximately 8–9 months prior, all of whom had previously claimed to be unemployed, were now employed by one of Samet's companies. Further, employees of Samet companies shared the same addresses with other employees and other companies. Seventeen employees of "Chalm & Co." lived at 16th Avenue in Brooklyn (along with numerous employees of other Samet companies), and 28 employees of the same corporation lived at 44th Street in Brooklyn (along with numerous employees from other Samet companies). Moreover, Wiesel's prior dealings with Samet, namely his filing of the 1999–tax returns, were highly suspicious, which supports an inference that by late 2000 the illegal nature of Samet's transactions was so readily apparent that Wiesel's purported ignorance must have been deliberate.

■ Wiesel also contends on appeal that, even if the district court properly invoked the conscious avoidance doctrine, intent to participate and join the conspiracy was not established at trial. In order to establish intentional participation in a

conspiracy, the government must prove: "1) knowing participation or membership in the scheme charged and 2) some knowledge of the unlawful aims and objectives of the scheme." *United States v. Lanza*, 790 F.2d at 1022; *see also United States v. Reyes*, 302 F.3d 48, 53 (2d Cir.2002). "[O]nce defendant's participation in a conspiracy has been proved, conscious avoidance may properly be used to prove his knowledge of its unlawful objectives." *Reyes*, 302 F.3d at 54–55.

Wiesel agreed to and did assist Samet and Hirsch in preparing obviously fraudulent tax documents. The fact that Weisel did not know that there were other members of the conspiracy or the full extent of the conspiratorial enterprise is irrelevant. *See United States v. Sureff*, 15 F.3d 225, 230 (2d Cir.1994). The fact that he may have been unaware of the conspiracy's unlawful purpose also does not neutralize the fact that Hirsch and Samet asked Wiesel to prepare tax returns for 1999 and W–2s for 2000 and incorporate eight improper companies, and Wiesel agreed to do so while deliberately ignoring the obvious fact that these tax documents were highly suspicious. Accordingly, there was sufficient evidence adduced at trial showing that Wiesel intended to participate in Samet's scheme to commit tax fraud.

■ Wiesel also argues on appeal that, since the indictment was focused on his filing of fraudulent 1999 tax returns, the indictment was constructively amended when the district court convicted Weisel based solely on his creation of phony W–2s, which facilitated the filing of false 2000–tax returns. "An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment. Constructive amendment of an indictment is a *per se* violation of the grand jury clause of the Fifth Amendment." *United States v. Patino*, 962 F.2d 263, 265–66 (2d Cir.1992)

(citations omitted). Here, the district court correctly found that "[t]here can be no doubt that the filing of the phony year 2000 returns, supported by underlying false documentation supplied by Wiesel, fits comfortably within the charged conspiracy." Further, the indictment broadly charged Wiesel with engaging in a fraudulent tax scheme that extended from late 1997 to March 2001. Wiesel's conviction for participation in Samet's scheme by facilitating the filing of fraudulent tax returns for 2000 is explicitly covered by the indictment.

■ Finally, Wiesel argues on appeal that he did not possess a special skill and thus the district court's imposition of a two level enhancement for use of a "special skill" to facilitate the commission of the offense pursuant to U.S.S.G. § 3B1.3 was improper. The district court did not commit clear error in finding that the two level enhancement was applicable. *United States v. Spencer*, 4 F.3d 115, 120 (2d Cir.1993) (holding that a self-taught amateur had a "special skill"). The Sentencing Guidelines define a "special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing." U.S.S.G. § 3B1.3, Application Note 3. Although Weisel did not have any formal tax training, the enhancement was still proper because members of the general public are not likely to know how to incorporate corporations or prepare W–2s. *See United States v. Lavin*, 27 F.3d 40, 41 (2d Cir. 1994); *see also United States v. Noah*, 130 F.3d 490, 500 (1st Cir.1997) (finding that tax-preparer employed "special skill," even though he lacked a special education).

For these reasons, the Court hereby AFFIRMS the judgment of conviction.