# United States Court of Appeals

## For the First Circuit

No. 03-1338

UNITED STATES OF AMERICA,
Appellee,

v.

STEPHEN J. BALTHAZARD,
Defendant, Appellant.

No. 03-1343

UNITED STATES OF AMERICA,
Appellee,

v.

STEVEN J. SOUVE,
Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. Ronald R. Lagueux, Senior District Judge]

Before
Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
and Barbadoro,* District Judge.

John F. Cicilline, for appellants.
Donald C. Lockhart, Assistant United States Attorney, with whom Craig N. Moore, United States Attorney, and Gerard B. Sullivan, Assistant United States Attorney, were on brief for the United States.

March 15, 2004

---

*Of the District of New Hampshire, sitting by designation.

**BARBADORO, District Judge**. Stephen Balthazard and Steven Souve were convicted of participating in a conspiracy to manufacture more than 1,000 marijuana plants. Defendants challenge their convictions on a host of grounds, the most significant of which depend upon the premise that the government proved at most that they were involved in a series of short-lived uncharged marijuana growing conspiracies rather than the single conspiracy described in the indictment. Arguing that this premise is incontestable, they assert that the trial court should have excluded all evidence of the uncharged conspiracies and granted their motions for judgment of acquittal. Alternatively, they contend that the court erred in failing to give their proposed multiple conspiracy instruction.

We reject defendants' multiple conspiracy arguments. As we explain below, the court properly admitted evidence concerning all of defendants' marijuana growing operations and appropriately denied their motions for judgment of acquittal because the government produced sufficient evidence to permit a finding that all of the operations were part of the single conspiracy charged in the indictment. The court also did not err in refusing to give defendants' proposed multiple conspiracy instruction because the proposed instruction was misleading.

Defendants also complain that the trial court made several erroneous evidentiary rulings, committed misconduct, failed

to instruct on a lesser included offense, and misapplied the sentencing guidelines. Because none of these arguments warrant reversal or remand, we affirm.

## I.

On September 12, 2000, law enforcement agents raided a warehouse located at 29 Okie Street in Providence, Rhode Island. Inside, they discovered evidence of a massive marijuana growing operation. The disclosure of the Okie Street operation resulted in an indictment charging that Balthazard and Souve had conspired with a third coconspirator, James St. Jacques, to manufacture and possess with intent to distribute marijuana "[f]rom a time unknown, but from at least on or about January 1, 1994 up to and including September 12, 2000."[1] The government contended at trial that Balthazard and St. Jacques had been partners in the marijuana business throughout the 1990s and that Souve joined the conspiracy in 1997 or 1998. The conspirators allegedly grew marijuana hydroponically at several different locations and processed it three or four times per year using "bud pickers" who were paid for their services in marijuana. We describe the evidence supporting these contentions in the light most favorable to the verdicts rendered. United States v. Portela, 167 F.3d 687, 692 (1st Cir. 1999).

The government relied on testimony from several bud

---

[1] St. Jacques died prior to trial.

-3-

pickers to describe the early phases of the conspiracy. These witnesses claimed that they worked initially for Balthazard and St. Jacques and remained active participants in the conspiracy after Souve became a member in 1997 or 1998. They described the respective roles that Balthazard, St. Jacques, and Souve played in the conspiracy and identified several different locations where the conspirators grew and processed marijuana.

The government also produced substantial evidence linking Balthazard, St. Jacques, and Souve to the Okie Street growing operation. It established that Balthazard rented the warehouse in his own name from 1993 until September 1998 and that he thereafter caused the lease to be transferred to a fictitious lessee. An electrician testified that St. Jacques hired him in 1994 to install grow lights, wiring, and timers at the warehouse. Several of the bud pickers and other coconspirators placed St. Jacques, Balthazard, and Souve at the warehouse while marijuana was being grown at the site and at St. Jacques' Rehoboth, Massachusetts home while marijuana from the Okie Street operation was being processed there. St. Jacques' wife testified that she split profits generated by the marijuana growing business equally among herself, Balthazard, and Souve after her husband was arrested on unrelated charges in April 2000. A ledger seized from St. Jacques' home both corroborated her testimony on this point and reflected the payment of additional drug sale proceeds to Balthazard to reimburse him for

-4-

rent on the warehouse.  Law enforcement witnesses also testified that Balthazard's fingerprints were found on transformer boxes attached to grow lights inside the warehouse and Souve's fingerprint was found on one of the grow light bulbs.

**II.**

Defendants' three main arguments depend upon their contention that what the indictment charged as a single conspiracy was at most a series of distinct marijuana growing operations. Arguing that only the Okie Street operation had any connection to the charged conspiracy, defendants first claim that the trial court erred in failing to exclude all evidence of the earlier marijuana growing operations.  In the same vein, they next argue that the court should have granted their motions for judgment of acquittal because the government failed to prove that they were members of the overarching conspiracy described in the indictment.  Finally, they fault the trial court for failing to give their proposed multiple conspiracy instruction.  We examine each argument in turn.

**A.   Admissibility - Evidence of Other Marijuana**
**Growing Operations**

Balthazard and Souve first claim that the court should have excluded all evidence that implicated them in marijuana growing operations other than Okie Street.  Their theory is that the challenged evidence was irrelevant and unfairly prejudicial because the government failed to connect the operations to the conspiracy described in the indictment.  This is primarily an

argument about conditional relevancy that we evaluate under Fed. R. Evid. 104(b). When the relevancy of evidence is conditioned on the establishment of a fact - in this case, that the other marijuana growing operations were undertaken in furtherance of the charged conspiracy - the offering party need only introduce sufficient evidence to permit a reasonable jury to find the conditional fact by a preponderance of the evidence to establish that the evidence is relevant. Huddleston v. United States, 485 U.S. 681, 689-90 (1988). Even relevant evidence should be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice and the prejudicial effect cannot be addressed by a limiting instruction. See Fed. R. Evid. 403. This concern is particularly acute when the challenged evidence implicates a defendant in uncharged criminal activity because if such evidence is admitted improperly, there is a real danger that it could be misused. Accordingly, even if the challenged evidence is conditionally relevant under Rule 104(b), we must also consider defendants' contention that the evidence nevertheless should have been excluded under Rule 403.[2]

Viewing the record in this light, the trial court's

---

[2] Defendants also make passing reference to Fed. R. Evid. 404(b), but that rule deals with the use of unrelated bad acts to prove a propensity for criminal conduct. It does not come into play at all in a case such as this, where we determine that the evidence is conditionally relevant under Rule 104(b). See United States v. Villarman-Oviedo, 325 F.3d 1, 11 (1st Cir. 2003).

decision to admit the challenged evidence is unassailable.  Several witnesses testified that Balthazard and St. Jacques worked together throughout the 1990s to grow, process, and sell marijuana and that Souve joined the conspiracy in 1997 or 1998.  The conspirators used the same core group of bud pickers to assist them in their operations throughout this period and the conspirators' goals and methods remained the same while the conspiracy was in existence. For these reasons, and because all of the challenged operations fell within the temporal limits of the charged conspiracy, we find little support for defendants' contention.

Balthazard and Souve nevertheless argue that the prior marijuana growing operations could not have been a part of the charged conspiracy both because the conspirators grew and processed the marijuana at different sites and because the prior operations were completed before Souve joined the conspiracy.  Neither argument has merit.  A single conspiracy does not fracture into multiple conspiracies merely because the conspirators shift the locations at which they conduct their operations.  See United States v. Walker, 142 F.3d 103, 112 (2d Cir. 1998); see also United States v. Brandon, 17 F.3d 409, 451 (1st Cir. 1994).  Nor does one conspiracy necessarily end and a new one begin each time a new member joins the organization.  See United States v. Bello-Perez, 977 F.2d 664, 668 (1st Cir. 1992).  Given the abundant evidence to support the government's single conspiracy theory, the changes in

the conspiracy that the defendants seek to highlight do not come close to raising a legitimate challenge under either Rule 104(b) or Rule 403.[3]

## B. Sufficiency - Evidence of a Charged Conspiracy

Balthazard and Souve next argue that the court erred in denying their motions for judgment of acquittal because the evidence proved only that they participated in multiple uncharged marijuana growing conspiracies rather than the overarching conspiracy described in the indictment. In assessing what is essentially a claim that the evidence varied materially from the crime charged in the indictment, "we 'canvass the evidence (direct and circumstantial) in the light most agreeable to the prosecution and decide whether that evidence, including all plausible

---

[3] Balthazard and Souve also argue that the court should have barred any reference to the other marijuana growing operations because the government conceded in its opening statement that only the Okie Street operation had any connection to the charged conspiracy. We reject this characterization of the government's opening statement. While the government did assert that "[a]s a practical matter, the only location that matters, during the period of limitations, is Okie Street," it made this statement in an effort to inform the jury that the defendants could not be found guilty unless the evidence demonstrated that the conspiracy continued beyond the bar date imposed by the statute of limitations. At no time did the government suggest that the prior operations were the product of separate conspiracies. Instead, it correctly informed the jury that any evidence of growing operations that predated the statute of limitations' bar date remained relevant but was not by itself sufficient to support the defendants' convictions. See United States v. Seuss, 474 F.2d 385, 391 (1st Cir. 1973) (explaining that pre-statute of limitations evidence is admissible to prove the existence of a conspiracy that overlaps the bar date imposed by the statute of limitations).

inferences extractable therefrom, enables a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime.'" United States v. Perez-Ruiz, 353 F.3d 1, 5 (1st Cir. 2003) (quoting United States v. Noah, 130 F.3d 490, 494 (1st Cir. 1997)). We consider all relevant circumstances in making this determination and pay particular attention to factors such as whether the alleged conspirators shared a common purpose, whether their actions demonstrated interdependency, and the extent to which participants overlapped during the life of the alleged conspiracy. See id. At the end of the day, a defendant cannot succeed with a sufficiency challenge "as long as a plausible reading of the record supports the jury's implied finding that he knowingly participated in the charged conspiracy." Id.

The same evidence that justifies the trial court's decision to admit the evidence of other marijuana growing operations is more than sufficient to also permit a jury to conclude beyond a reasonable doubt that all of the operations were undertaken in furtherance of the charged conspiracy. More fundamentally, defendants could not prevail even if this were not the case. While the government was free to argue that all of the operations were part of the charged conspiracy, it was not required to prove this contention to establish defendants' guilt. A multiple conspiracy claim undermines a conspiracy prosecution only when it creates doubt about whether the defendant is guilty of the

charged conspiracy. In this case, the evidence of the Okie Street operation was sufficient by itself to prove that defendants were guilty of the multiple year conspiracy to manufacture more than 1,000 marijuana plants that was described in the indictment. This is because the evidence demonstrated that Balthazard, St. Jacques, and later Souve, used the Okie Street site to grow thousands of marijuana plants from at least 1994 until the conspiracy was broken up in September 2000. Evidence showing that the conspirators also grew marijuana at several other sites, while qualifying as additional evidence of the conspiracy, was by no means essential to the government's case. Thus, the trial court was justified in denying defendants' motions for judgment of acquittal regardless of whether the evidence was sufficient to prove beyond a reasonable doubt that the other marijuana growing operations were undertaken in furtherance of the charged conspiracy.

## C.  **Jury Instruction - Multiple Conspiracy Defense**

Defendants' argument that the trial court erred in failing to give their proposed multiple conspiracy instruction at least in theory has a better chance of success than their two previous arguments because it is governed by a more favorable standard of review. A multiple conspiracy claim ordinarily presents a question of fact for the jury to resolve. See United States v. LiCausi, 167 F.3d 36, 45 (1st Cir. 1999). Thus, a court should instruct on the issue "if, 'on the evidence adduced at

trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'" United States v. Brandon, 17 F.3d 409, 449 (1st Cir. 1994) (quoting United States v. Boylan, 898 F.2d 230, 243 (1st Cir. 1990)).  A court need not give a proposed jury charge, however, if it is incorrect, incomplete, or misleading.  See United States v. Lara, 181 F.3d 183, 196 (1st Cir. 1999).  This is the case here.

The trial court correctly instructed the jury that the defendants could not be found guilty unless the government proved beyond a reasonable doubt "that the agreement or conspiracy specified in the indictment, and not some other agreement, or agreements existed, between at least two people to manufacture, possess, or distribute 1,000 or more marijuana plants."  The proposed instruction elaborates on this basic point by stating "[t]he question of whether there is a single conspiracy or multiple conspiracies is one of fact for the jury."  It then lists several factors that the jury could consider in determining whether the evidence supported the defendants' multiple conspiracy defense. While the factors listed in the instruction are all drawn from our prior decisions, the instruction adds little to the court's instruction and, in any event, it is misleading because it fails to explain what jurors should do if the evidence suggests that some of the marijuana growing operations were the result of separate conspiracies.  As a result, the proposed instruction leaves the

-11-

misimpression that jurors should acquit if they have a reasonable doubt about whether any of the defendants' marijuana growing operations were the product of separate conspiracies. As we have explained, multiple conspiracy is not a defense unless it creates a reasonable doubt about whether the defendant is guilty of the charged conspiracy. The government did not need to prove that all of the marijuana growing operations were undertaken in furtherance of the charged conspiracy in order to establish the defendants' guilt as long as they were able to demonstrate that the defendants were guilty of the charged conspiracy. Because the proposed instruction suggests otherwise, it is misleading and the court was under no obligation to give it.

## III.

Defendants argue that the trial court made a number of erroneous evidentiary rulings, committed misconduct, failed to instruct on a lesser included offense, and misapplied the sentencing guidelines. We briefly address each of the defendants' arguments.

## A.  Evidentiary Issues

### 1.  Rule 404(b) - Other Crimes Evidence

Fed R. Evid. 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Defendants point to several instances in which they claim that the

trial court admitted evidence in violation of this rule.

### a. __Other Marijuana Sales__

John Elliot, one of the bud pickers, testified that he had known Balthazard since the late 1980s and had worked for the conspirators from 1990 until the summer of 2000. Over Balthazard's objection, Elliot answered "yes" to the prosecutor's question "[h]ave you ever received marijuana from Mr. Balthazard?" Balthazard argues that the court should have sustained his objection because the prosecutor failed to establish that Elliot had received the marijuana from Balthazard while the conspiracy was in existence.

While it is true that the jury could not determine from the prosecutor's question and Elliot's answer precisely when Elliot received marijuana from Balthazard, Elliot's testimony nevertheless was admissible as evidence of the "'background, formation, and development of the illegal relationship'" between them even if Elliot was not a member of the conspiracy when he received the marijuana. United States v. Scott, 270 F.3d 30, 47 (1st Cir. 2001) (quoting United States v. Karoudakis, 233 F.3d 113, 118 (1st Cir. 2000)). The court's ruling on the issue thus was correct.

### b. __Prior Theft of Electricity Conviction__

The prosecutor referred during his redirect examination of Special Agent Kleber to the fact that Kleber was aware of "Pawtucket Police reports concerning theft of electricity in the

early nineties." Balthazard claims that this was an improper reference to his prior nolo contendere plea to a charge of theft of electricity.

We reject Balthazard's argument because we agree with the district court that he "opened the door" to questioning about the report. During cross examination, Balthazard's counsel suggested to Special Agent Kleber that the only investigative report that linked Balthazard to unrelated criminal activity was a report that concerned stolen auto parts. By seeking to create an impression in the minds of jurors that Balthazard had had only limited prior contacts with law enforcement, Balthazard's counsel opened the door to questioning about additional reports that linked Balthazard to other criminal activity. The trial court thus did not act inappropriately in allowing the government to follow up on an issue that Balthazard himself had raised. See, e.g., United States v. Sotomayer-Vazquez, 249 F.3d 1, 12 (1st Cir. 2001) (defendant opened the door to cross examination concerning Rule 404(b) evidence by testifying about the subject on direct).

### c. **False Tax Return**

The government established that Balthazard purchased and made $58,000 in payments on a 37-foot custom-designed motor boat in 1998 while reporting limited income on his tax returns for the years leading up to the purchase. Balthazard's accountant also testified that he prepared a false tax return for Balthazard that

-14-

he used to obtain a loan for the boat purchase.  Balthazard argues that the trial court should have excluded evidence of the false tax return.

The false return had no connection to Balthazard's drug dealing and it added nothing to the government's attempt to show that Balthazard had earnings that exceeded his legitimate income. Because the government has not identified any other reason why the false tax return evidence was relevant, we agree that the court should have excluded the false return.

The government nevertheless argues that the admission of the false tax return evidence was harmless.  When the government makes such a claim, it must demonstrate that it is "highly probable" that the court's erroneous ruling played no role in the conviction.  See United States v. Meserve, 271 F.3d 314, 329 (1st Cir. 2001).  While there is always some risk that a jury could be prejudiced by hearing evidence that a defendant has engaged in uncharged misconduct, the evidence of Balthazard's guilt is so strong that evidence suggesting that he also was involved in another unrelated and less serious criminal scheme was inconsequential. Accordingly, we reject Balthazard's claim because the court's error in refusing to exclude the false tax return evidence was harmless.

## 2. **Rule 612 - Refreshing Recollection**

The government filed a downward departure motion on

behalf of Christine St. Jacques that stated "though [St. Jacques] was not personally involved in the [Okie Street growing] operation, she was able to take investigators to a commercial structure located in the City of Providence used as a large scale indoor grow."  Defendants wanted the jury to hear this statement because they believed that it would undercut St. Jacques' claim at trial that she had split the profits generated by the Okie Street operation with Balthazard and Souve while her husband was in prison.  Defendants attempted to accomplish this objective by confronting FBI Special Agent Russell Kleber with the motion on cross examination and attempting to use it to refresh his recollection.  The trial court blocked the attempt and defendants argue that the court erred.

It is hornbook law that a party may not use a document to refresh a witness's recollection unless the witness exhibits a failure of memory.  See N.L.R.B. v. Fed. Dairy Co., 297 F.2d 487, 488-89 (1st Cir. 1962); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 612.03[2][a] (Joseph M. McLaughlin ed., 4th ed. 2003).  While Special Agent Kleber refused to accept counsel's contention that St. Jacques had no knowledge of the Okie Street operation, he did not claim that his memory on the point was impaired.  Thus, the trial court correctly rejected defendants' attempt to use the downward departure motion to refresh Special Agent Kleber's recollection.

### 3. **Rule 801(c) - Hearsay**

Law enforcement officials discovered two notes when they searched the Okie Street warehouse. The first, addressed to "Steve S," specified different "PPMs" (parts per million) of a certain additive that were to be used for "Little guys," "Med guys," and "Big guys"; reminded the intended recipient to "spray"; and instructed him to "get Bob F to wire up and help you set up." The second note included the phrase "when SJ's back" and instructed the intended recipient to "clean tanks," "spray" and "rap [sic] water pipes." Defendants argue that the trial court should have excluded the notes because they contained inadmissible hearsay.

The short answer to this argument is that the defendants are simply wrong. The notes do not contain any hearsay statements. Instead, they are instructions from one participant in the conspiracy to another concerning the care and feeding of marijuana plants. Documents of this sort are obviously relevant regardless of whether the instructions they contain were ever followed. See, e.g., United States v. Alosa, 14 F.3d 693, 696 (1st Cir. 1994) ("[I]f records manifestly are or are shown by other evidence to be drug records, they are admissible 'real evidence' tending to make it more likely that a drug business was being conducted.").

### 4. **Rules 701 and 702 - Opinion Testimony**

Balthazard argues that the trial court impermissibly permitted Special Agent Kleber to express his opinion that one of

the notes that agents found at the Okie Street warehouse had been left there between 1994 and 1998. Special Agent Kleber based his opinion on the fact that the note referred to an electrician named "Bob F" and Kleber knew that an electrician named Bob Foster had been hired to do work at the Okie Street warehouse on more than one occasion between 1994 and 1998. While the court arguably should have sustained Balthazard's objection to this opinion evidence because it does not appear to qualify as either admissible expert or lay opinion testimony, the challenged evidence could not have affected the verdicts. Special Agent Kleber's opinion was an obvious and appropriate deduction from evidence that was before the jury. The jury plainly would have drawn the same conclusion without his help. In any event, the note was only one small piece of a mountain of evidence that proved Balthazard's guilt of the alleged conspiracy. Any error that the trial court made in allowing the opinion testimony was harmless.

## B. Judicial Misconduct

Scott Blais, another bud picker, testified that Balthazard was "fading out" of the marijuana processing part of the conspiracy in 1998. On redirect, Blais explained this comment by stating that Balthazard's "appearance was just less and less as to the marijuana aspect of the processing." In an apparent effort to emphasize this point, the prosecutor asked Blais "[y]ou saw [Balthazard] less frequently in '98?" Balthazard's counsel

immediately objected and stated "[t]hat wasn't his testimony. He said I didn't see him." The district court responded by stating "[o]verruled. That was his testimony." The following colloquy ensued:

> MR. CICILLINE: Please note my objection to that, as well.
> THE COURT: You don't have to state that. When you rise and make an objection and I rule on it, that's it. I don't want to hear anymore argument from you.
> MR. CICILLINE: Judge, I'm objecting to the manner in which you answer me.
> THE COURT: Sit down. Sit down. I don't like the way you're acting.
> MR. CICILLINE: I object to that, as well.
> THE COURT: All right, you can object to that, if you wish. But I will tell you right now, that when I make a ruling, I don't want to hear any further arguments from you. Go ahead.

Balthazard claims that the court misstated Blais's testimony and improperly rebuked his counsel in front of the jury. Neither argument has merit.

We are satisfied after reviewing the record that it was Balthazard's counsel rather than the court who mischaracterized Blais's testimony. Thus, the court did not err in overruling the objection. Nor did the court act improperly by instructing Balthazard's counsel that he should refrain from commenting on the court's evidentiary rulings. See United States v. Gomes, 177 F.3d 76, 79-80 (1st Cir. 1999). While it is generally preferable to deliver such instructions outside the presence of the jury, we allow trial judges substantial discretion in determining how best

-19-

to ensure that attorneys behave appropriately in court.  <u>Id.</u>  In this case, the court's admonishment was both warranted and relatively mild.  Under the circumstances, the court did not abuse its discretion by making its comments in the presence of the jury.

## C.   **Failure to Instruct on a Lesser Included Offense**

The maximum sentence that may be imposed for conspiracy to manufacture and possess with intent to distribute marijuana depends upon the amount of marijuana that is attributed to the conspiracy.  If a conspiracy involves at least 1,000 kilograms of marijuana or an equivalent number of marijuana plants, the maximum sentence is life.  <u>See</u> 21 U.S.C. § 841(b)(1)(A).  If the conspiracy involves at least 100 but less than 1,000 kilograms of marijuana or an equivalent number of marijuana plants, the maximum sentence is 40 years.  <u>See</u> 21 U.S.C. § 841(b)(1)(B).  The maximum sentence is 20 years if the conspiracy involves at least 50 but less than 100 kilograms of marijuana or an equivalent number of marijuana plants. <u>See</u> 21 U.S.C. § 841(b)(1)(C)-(D).  Lesser amounts are punishable by a sentence of up to five years.  <u>See</u> 21 U.S.C. § 841(b)(1)(D).

The trial court treated § 841(b)(1)(B) (at least 100 but fewer than 1,000 marijuana plants) as a lesser included offense of § 841(B)(1)(A) (1,000 or more marijuana plants).[4]  It thus gave the

---

[4]   The defendants and the government both accept the trial court's characterization of §§ 841(b)(1)(B)-(D) as lesser included offenses of § 841(b)(1)(A).  Our recent decision in <u>United States v. Goodine</u>, 326 F.3d 26 (1st Cir. 2003), at least potentially calls the court's conclusion on this point into question because we held

jury the option to convict the defendants of the version of the offense that carries a 40-year maximum sentence. The court, however, refused defendants' request to also instruct on § 841(b)(1)(D) (fewer than 50 marijuana plants). The matter is potentially relevant because defendants' sentences exceeded the five-year maximum that they would have been exposed to if they had been found guilty of conspiracy under § 841(b)(1)(D).

It is difficult to see how on the present record the jury could have found the defendants guilty of a conspiracy to manufacture fewer than 50 marijuana plants. But we need not speculate on this point because the verdicts that the jury actually returned eliminate any possibility that the failure to instruct on § 841(b)(1)(D) could have affected its thinking.

One of the principal reasons why a defendant is entitled to a lesser included offense instruction when the evidence supports it is that such an instruction "protects a defendant from a conviction in situations where a jury, although dubious about whether the prosecution has proved an indispensable element of the crime charged in the indictment, nevertheless considers the

---

in that case that drug quantity is a sentencing factor rather than an element, id. at 32-33, and we have traditionally decided whether one offense is a lesser included offense of another by asking whether "the elements of the lesser offense are a subset of the elements of the charged offense." See Schmuck v. United States, 489 U.S. 705, 715-16 (1989). We need not delve into this issue. As we shall explain, even if a lesser included offense instruction were appropriate, the record here shows that no error occurred.

-21-

defendant to be guilty of some crime -- and is, therefore, reluctant to acquit." United States v. Flores, 968 F.2d 1366, 1369 (1st Cir. 1992). A lesser included offense instruction minimizes this risk by giving jurors a "third option" when neither an acquittal nor a conviction on the charged offense fits the facts of the case. Schad v. Arizona, 501 U.S. 624, 646 (1991).

We have no reason to fear in this case that the jury improperly convicted the defendants of the charged conspiracy for lack of a less serious option because the court gave the jury the chance to convict on a charge of conspiracy to manufacture fewer than 1,000 marijuana plants. If jurors had felt compelled to find the defendants guilty of something even though they had a reasonable doubt about the drug quantity charged in the indictment, they logically would have found the defendants guilty of the lesser offense. Because they instead convicted on the more serious offense, the issue is a moot point. See id. (first degree murder conviction was not called into question by court's failure to instruct on lesser included robbery charge because jury considered and rejected option to convict on second degree murder).

D.   **Sentencing - Drug Quantity Determination**

The probation office prepared presentence reports for both Balthazard and Souve that proposed to hold them each responsible for 9,295 marijuana plants. The proposed findings were based on evidence that agents had seized 56 developed plants, 3,616

-22-

seedlings, and 5,623 stems or stumps of dead or harvested plants from the Okie Street warehouse when they raided it in September 2000. Using the 1-plant-to-1-kilogram conversion ratio specified in U.S.S.G. § 2D1.1(c)(5), the probation office determined that each defendant was responsible for 929.5 kilograms of marijuana.

Souve did not challenge the probation officer's proposed drug quantity determination, but Balthazard argued that the proposed determination was excessive because it improperly counted each of the more than 5,000 stems or stumps found at the scene as a single plant when, as Balthazard's counsel claimed, "as a matter of physics, a single stump or a single root formation could have several stems." The trial court disposed of this argument by stating "the evidence is overwhelming that on the day the government moved in, there were remnants of more than 9,000 plants in the premise. That is not even considering the other relevant conduct in other groves [sic]." Both defendants press Balthazard's sentencing argument on appeal.

When a defendant challenges a proposed drug quantity determination at sentencing, the government must prove that the determination is warranted by a preponderance of the evidence. United States v. Burke, 999 F.2d 596, 601 (1st Cir. 1993). Once the sentencing court has resolved the issue, however, its

determination stands unless it is clearly erroneous.[5]   United

States v. Sanchez, 354 F.3d 70, 74 (1st Cir. 2004).

Neither Balthazard nor Souve presented any evidence to

support their position that a single marijuana plant will often

have more than one stem.  Moreover, the only circuit court that

has addressed the issue has concluded on the basis of a far more

complete evidentiary record that "[e]ach stalk protruding from the

ground and supported by its own root system should be considered

one plant, no matter how close to other plants it is and no matter

how intertwined are their root systems."   United States v.

Robinson, 35 F.3d 442, 447-48 (8th Cir. 1994).  Because defendants

failed to present any evidence to support their contrary argument,

we are in no position to say that the sentencing court's findings

on the point are clearly erroneous.[6]


**IV.**

---

[5]  Because Souve did not raise his challenge in the district court, we review his claim for plain error.  See United States v. Phanuef, 91 F.3d 255, 262 (1st Cir. 1996).

[6]  Defendants also argue that the sentencing court improperly imposed a four-level increase in each of their base offense levels pursuant to U.S.S.G. § 3B1.1 because the court found that they were organizers or leaders of a criminal activity that "involved five or more participants or was otherwise extensive."  We summarily reject this argument because the record contains ample evidence to justify the sentencing court's conclusion that both defendants led an extensive drug manufacturing and distribution conspiracy that involved as many as nine different bud pickers and other conspirators.

Defendants have no basis to complain of their treatment in district court.  The evidence against them was overwhelming, the trial was fairly conducted, and their sentences were lawful.  The judgments below are **<u>affirmed</u>**.