# United States Court of Appeals
## For the First Circuit

No. 08-1813

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES NIEMI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin and Howard, and Tashima,[*]
Senior Circuit Judge.

William Maselli for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief, for appellee.

August 31, 2009

[*]    Of the Ninth Circuit, sitting by designation.

**TASHIMA**, <u>Senior Circuit Judge</u>. James Niemi appeals his convictions for conspiracy to possess with intent to distribute 500 grams or more of cocaine, cocaine base, and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for use of a communications facility to facilitate a drug offense, in violation of 21 U.S.C. § 843(b). Niemi contends that the district court erred by refusing to give his requested jury instruction on multiple conspiracies and by permitting the prosecution to introduce evidence of Niemi's character in violation of Federal Rules of Evidence 404(b). He also argues that his conviction should be overturned for lack of sufficient evidence to support the charges, and because the prosecution's closing argument impermissibly commented on his failure to testify at trial. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.  Background

We begin with a brief description of the facts of the case, which we will supplement as necessary in our discussion. We view the facts in the light most favorable to the jury's verdict. <u>United States</u> v. <u>Portela</u>, 167 F.3d 687, 692 (1st Cir. 1999).

Niemi was one of fourteen people charged with taking part from March, 2005, to November, 2006, in a drug ring centered around Jeremy Mercier. Prosecutors introduced evidence that Mercier bought kilograms of cocaine from suppliers in New York and sold the drugs from a garage in Minot, Maine, where he ran a business

selling all-terrain vehicles.  Niemi was one of several regular customers of Mercier, buying up to two ounces of cocaine at a time. Mercier allowed Niemi, unlike other co-conspirators, to accompany him to the attic above the garage where Mercier kept his supply of drugs, and Niemi knew and dealt with many other conspirators, including one of Mercier's suppliers.

At the end of August, 2006, government agents began a wiretap of Mercier's phone.  They recorded numerous conversations between Niemi and Mercier in which Niemi spoke about buying and selling cocaine using the same code words that other participants in the operation used.  Agents began acting to shut down the conspiracy in October, 2006, causing one of Mercier's suppliers to be arrested and a large amount of cocaine seized.  In January, 2007, two months after the end of the conspiracy as alleged in the indictment, agents arranged a controlled buy of cocaine from Mercier.  They observed Mercier travel to Niemi's house, apparently to pick up some cocaine, and soon afterward they arrested both Mercier and Niemi.

Niemi was ultimately tried alongside James Michaud, another alleged co-conspirator.  At trial, Niemi argued that there had not been one large conspiracy, but rather many smaller conspiracies, and that Niemi was therefore not guilty of participating in the single conspiracy described in the indictment.

The jury found Niemi guilty on all counts, and this appeal followed.

## II.  Jury Instructions on Multiple Conspiracies

Niemi contended at trial that the overarching conspiracy alleged in the indictment had not existed, and that instead there had been a series of separate conspiracies among different participants.  Niemi requested that the following instruction on multiple conspiracies be read to the jury:

> 1. Defendant's Theory of the Case:
> It is the Defendant Niemi's contention that no identifiable single conspiracy was proven by the Government in this case, only a series of possible separate Conspiracies. If you find this to be true, that the Government has failed to prove an identifiable conspiracy as alleged beyond a reasonable doubt, the verdict must be Not Guilty.
>
> 2. Multiple Conspiracies
> The burden is upon the Government to prove the existence of the charged conspiracy beyond a reasonable doubt.  The Government must also prove beyond a reasonable doubt that the Defendant willfully entered that Conspiracy, and not some other conspiracy or conspiracies.  If you find that Defendant Niemi was involved in some separate conspiracy or conspiracies but that the Government has failed to prove beyond a reasonable doubt either the existence of the charged conspiracy or Niemi's involvement in the charged conspiracy, he must be found Not Guilty.

The district court declined to read this instruction to the jury, reasoning that its own instruction was sufficient on this matter. The court instructed the jury as follows:

> For you to find either of these defendants guilty of conspiracy, you must be convinced that the Government has proven each of the following things beyond a reasonable doubt:
>
> First, that the agreement specified in the indictment, not some other agreement, existed between at least two people

to distribute or possess with intent to distribute cocaine; and, second, that the defendant willfully joined that agreement.

. . .

A conspiracy is an agreement, spoken or unspoken. The conspiracy does not have to have a formal agreement or plan in which everyone involved sat down and worked out all the details. But the Government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime. Mere similarity of conduct among various people or the fact that they may have associated with each other or discussed common names and interests does not necessarily establish proof of the existence of a conspiracy. But you may consider such factors.

Niemi now argues that the district court's instructions were insufficient to make clear to the jury that Niemi could be convicted only if he had been guilty of participating in the specific conspiracy alleged in the indictment.

It is true that "a court should instruct on the issue [of multiple conspiracies] 'if, on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'" United States v. Balthazard, 360 F.3d 309, 315 (1st Cir. 2004) (quoting United States v. Brandon, 17 F.3d 409, 449 (1st Cir.1994)) (further internal quotation marks and citations omitted). In Balthazard, the defendants, who operated a marijuana growing business, argued that they engaged only in a series of short-lived conspiracies, not the overarching conspiracy alleged in the indictment. Id. at 312. The trial court gave the jury an instruction almost identical to the one here, stating that the government was required to prove

beyond a reasonable doubt "that the agreement or conspiracy specified in the indictment, and not some other agreement, or agreements existed, between at least two people to manufacture, possess, or distribute 1,000 or more marijuana plants." Id. at 316. The defendants argued that the instructions should have gone further and listed factors to assist the jury in deciding whether there was a single conspiracy or multiple conspiracies, but we upheld the district court's instructions as sufficient. Id. Those instructions were equally sufficient in Niemi's case. Because the substance of the requested instruction was covered in the district court's instructions, Niemi's claim fails. See United States v. Prigmore, 243 F.3d 1, 17 (1st Cir. 2001).

### III. Sufficiency of the Evidence

Niemi argues that the evidence did not show that there was a single, overarching conspiracy as alleged in the indictment, but rather a series of individual conspiracies. Whether evidence shows one or many conspiracies is a question of fact for the jury and is reviewed only for sufficiency of the evidence. United States v. David, 940 F.2d 722, 732 (1st Cir. 1991). Under this standard of review, "we examine the evidence – direct and circumstantial – as well as all plausible inferences drawn therefrom, in the light most favorable to the verdict, and determine whether a rational fact finder could conclude beyond a

-6-

reasonable doubt that the defendant committed the charged crime." United States v. Wyatt, 561 F.3d 49, 54 (1st Cir. 2009).

In evaluating whether a single conspiracy existed, rather than several, "courts consider the totality of the circumstances, paying particular heed to factors such as the existence of a common goal, evidence of interdependence among the participants, and the degree to which their roles overlap." United States v. Fenton, 367 F.3d 14, 19 (1st Cir. 2004). These characteristics can exist in a hub-and-spoke conspiracy to sell drugs, in which one core figure supplies drugs to multiple participants. See Portela, 167 F.3d at 695-96. The intent to sell drugs may be the common goal, and the presence of the hub figure may be sufficient to establish overlap among many members. Id. Interdependence may be shown where one participant knows that his own success depends on the continued existence and health of the drug distribution organization as a whole. Id. at 697. A group may engage in a single conspiracy even if they are somewhat loosely related: "the proof need not show that each conspirator knew of all the others, nor that the group remained intact throughout the duration of the enterprise." Fenton, 367 F.3d at 19.

In this case, there was ample evidence to support the jury's conclusion that Niemi took part in a single conspiracy with Mercier at the center. Several co-conspirators testified that they purchased drugs from Mercier from his garage, and that they knew

Niemi as another of Mercier's customers. Niemi used the same code words for drugs as other members of the conspiracy, and there was evidence that he coordinated with Mercier on at least one occasion to provide cash and help arrange for a supply of drugs. In short, the evidence showed a classic hub-and-spoke conspiracy with Mercier at the center and Niemi as an important spoke. The jury could have reasonably concluded that Niemi knew of the existence and scope of Mercier's operations, and knew that his own ability to obtain and sell drugs depended on the success of the conspiracy as a whole. The evidence was sufficient to support the jury's verdict, and we therefore reject Niemi's challenge.

## IV. Bad Acts Evidence

Niemi contends that the district court erred by admitting evidence regarding bad acts committed by Niemi after the end of the conspiracy as charged in the indictment. Drug enforcement agents testified that, in January 2007, two months after the indictment alleged in the conspiracy ended, agents arranged a controlled purchase of drugs from Mercier. Agents observed Mercier drive to Niemi's house and then return home. They then searched Niemi's house and found Niemi's cell phone, which had Mercier's contact information in it. Niemi did not object to the introduction of this evidence at trial.

According to Niemi, this evidence should have been excluded pursuant to Federal Rule of Evidence 404(b) as evidence of

other crimes or bad acts with which Niemi was not charged.  This type of evidence is not forbidden in all cases, however, but only "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).  It may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Id. Because Niemi failed to object to the introduction of the evidence at trial, we review the district court's decision for plain error. United States v. Washington, 434 F.3d 7, 11 (1st Cir. 2006).

The evidence in question "was not just some random drug crime by [the defendant] from which could be inferred a propensity on his part to commit drug crimes."  United States v. Fanfan, 468 F.3d 7, 12 (1st Cir. 2006).  It was closely linked in time to the alleged conspiracy and proved the identities and relationships of the conspirators.[2]  See id.  The district court's admission of the evidence was far from plain error.

## V. Comments by Prosecutor at Closing Argument

Niemi argues that his conviction should be reversed because the prosecution commented during closing arguments on Niemi's refusal to testify.  The allegedly improper statements occurred when the prosecution discussed the matter of code words used to refer to drugs, in anticipation of the defendants'

---

[2]    For the same reason, the evidence was not irrelevant and therefore inadmissible under Fed. R. Evid. 402, as Niemi contends.

arguments that no code words had been used. The prosecutor referred to phone recording #1975, a conversation between Mercier and Michaud, who was Niemi's co-defendant. In this conversation, Michaud asked Mercier, "How's life?" and Mercier responded that it was "expensive" because his friend was in Greece. According to the prosecution, Michaud was referring to Niemi's primary supplier of drugs, who was on vacation in Greece at the time of the conversation. In the closing argument, the prosecution told the jury, "[S]ee how [the defense attorneys] address the evidence I've addressed. How do they address call [number] 1975? How does [Michaud's attorney] say that his client, that how's life, expensive, is not cocaine?"

At no point in these statements did the prosecution make reference to Niemi's failure to testify. In pointing out the defense's failure to respond to the government's evidence, the prosecution referred not to Niemi, but to his co-defendant's attorney. As we have previously noted,

> the prosecutor is entitled to draw the jury's attention to the balance of evidence on contested issues. After all, putting on the government's case is a sort of compulsion of the defendant to answer it; and the government "must also be free to engage in normal advocacy so long as it does not point a finger at the accused's remaining silent in the courtroom."

United States v. Stroman, 500 F.3d 61, 65 (1st Cir. 2007) (quoting United States ex rel. Leak v. Follette, 418 F.2d 1266, 1268 (2d Cir. 1969)). The prosecutor did not overstep these bounds by

arguing to the jury that the defense could not rebut the prosecution's evidence on the use of code words.

Furthermore, even if the district court had erred in failing to strike the prosecutor's statement, the error would have been harmless. Immediately after the prosecution's closing argument was finished, the court reminded the jury "that the Government has the burden of proving all elements of this case beyond a reasonable doubt. The defendants don't have to prove anything and the defendants don't have to explain anything." The prosecutor's statement was isolated and was quickly followed by a cautionary instruction, and there was little chance that Niemi suffered any prejudice as a result. Thus, there is no need to overturn the conviction. See United States v. Joyner, 191 F.3d 47, 54 (1st Cir. 1999).

## VI. Conclusion

For these reasons, we reject Niemi's contentions and **AFFIRM** the judgment of the district court.