# United States Court of Appeals
## For the First Circuit

No. 10-1894

UNITED STATES OF AMERICA,

Appellee,

v.

LEONARD JONES,
a/k/a Tony, Shy, Shyheem, Anthony James,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before
Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Boudin, Circuit Judge.

John T. Ouderkirk, Jr., by appointment of the court, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Thomas E. Delahanty II, United States Attorney, was on brief for appellee.

March 22, 2012

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**BOUDIN**, **Circuit Judge**.  Leonard Jones was convicted of conspiring to possess with intent to distribute cocaine, cocaine base and ecstasy, 21 U.S.C. §§ 841(a), 846 (2006).  Due to his prior state drug possession convictions, Jones was sentenced to life in prison under statutorily enhanced penalty provisions.  Id. § 841(b)(1)(A).  He appeals both his conviction and his sentence, raising myriad procedural and constitutional claims.

Jones was indicted in May 2009 for the conspiracy offense.  On April 12, 2010, the day of opening arguments in Jones' trial before an empaneled jury, the government filed a notice, pursuant to 21 U.S.C. § 851, seeking enhanced penalties due to the prior drug convictions.  Although notice is ordinarily due before jury selection, Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999), the requisite timing here was affected by earlier plea negotiations discussed later in the decision.

The bulk of the government's evidence at trial, directly relevant to the sufficiency claim advanced on this appeal, was from five co-conspirators of Jones' who lived in Maine, all of whom had entered plea agreements for reduced sentences in exchange for their testimony against Jones.  If believed by the jury, the testimony of the co-conspirators and other witnesses (primarily government agents) together with some other evidence established the following:

> -that one of the co-conspirators had met Jones
> in Georgia through a mutual acquaintance; in

-2-

late 2005 this co-conspirator invited Jones to visit him in Maine, citing the greater profit to be made selling drugs in Maine than in Georgia. Jones agreed and arrived in Maine several days later with packaged bags of cocaine;

-that thereafter Jones traveled frequently between his home in Georgia and the area around Lewiston, Maine, between 2005 and 2008, usually staying in Maine for several days at a time; that his travel was corroborated at trial by cell phone and airline records; and that evidence indicated that Jones made approximately ten trips between Georgia and Maine;

-that Jones' contacts in Maine expanded after his initial trip; that these individuals-- indicted as well and testifying against him at trial--would to varying degrees sell the drugs he brought, let Jones use their apartments as bases of operation, and in some cases travel themselves to Georgia at Jones' request to assist him in bringing drugs back to Maine;

-that in June 2006, Jones was arrested in Maine after a routine traffic stop, and was found to possess several cell phones in his car, $100 in his hat, $1,000 in one of his pockets and $535 in the other, and $750 in one of his socks; and

-that in 2008, when federal agents began speaking with several of Jones' contacts, Jones directed one of his co-conspirators--a recording of the call was offered at trial--to find out who was cooperating and to "go guns their ass out." (Jones later testified that this was a joke.)

In his defense at trial, Jones' lawyer called two federal agents and, apparently seeking to impeach the prior testimony of some of the co-conspirators, asked briefly about their involvement with Jones' co-conspirators. Jones also testified at trial,

claiming that his visits to Maine were prompted by social relationships; that his income was derived from a car wash business and dog breeding in Georgia; and that his rental in late 2007 of an apartment in Maine was aimed at bringing a lady friend to live in Maine.

The trial lasted three days and ended when the jury returned a guilty verdict after deliberating for about five hours. Three months later, Jones was sentenced to life imprisonment, a sentence the judge found to be required in light of the prior drug felonies established at sentencing and the enhanced penalty provision invoked by the government. This appeal followed.

Jones' first challenge to his conviction is to the sufficiency of the evidence, posing the question whether a rational factfinder could find guilt beyond a reasonable doubt. United States v. Cruz-Rodríguez, 541 F.3d 19, 26 (1st Cir. 2008), cert. denied, 555 U.S. 1144, and cert. denied, 129 S. Ct. 1923 (2009). He preserved this claim, moving for acquittal after the prosecution's opening case and renewing the motion at the close of the trial. Our review is de novo, but the trial evidence is considered "in the light most favorable to the prosecution." Id. So viewed, we conclude that the jury had a rational basis for its guilty verdict.

Given the conjoined testimony of five co-conspirators and the limited explanations given by Jones, the case against him might

seem clearly ample.  True, no drugs were seized from him; and the co-conspirator testimony against him was likely secured by prospects of leniency for the witnesses (a fact the jury was made aware of).  But witness credibility is normally a call for the jury, and the co-conspirator testimony was from multiple witnesses and dovetailed with the travel records and phone call recording.

Jones' brief does not directly dispute that he could be found to have supplied drugs with some regularity to the co-conspirators and that some of them in turn sold and gave such drugs to others.  So the evidence amply made out relationships between Jones and several co-conspirators that could easily be viewed as a conspiracies to distribute.  Jones' complaint that there was no showing of a "common purpose" between the conspirators is perhaps more charitably read as a claim that he was charged and convicted of one overall conspiracy when, on the evidence accepted by the jury, only several smaller ones were proved.

True enough, a verdict <u>may</u> be vulnerable if one conspiracy is charged in the indictment but the evidence is sufficient to constitute proof only of a different conspiracy (or several of them).  <u>See</u> <u>United States</u> v. <u>Dellosantos</u>, 649 F.3d 109, 116-17 (1st Cir. 2011).  The reasons relate to the constitutional pre-condition of a grand jury indictment and to the indictment's notice of the offense charged.  <u>Id.</u>  And, in practical terms, the prosecution secures several familiar advantages in charging a large

-5-

conspiracy rather than a smaller one or even several smaller ones.[1]

Accordingly, a common claim on appeal in federal drug conspiracies is that the defendant was a member (at most) only of another conspiracy--usually a smaller one--than the one charged in the indictment under which he was convicted.  See 40 Geo. L.J. Ann. Rev. Crim. Proc. 309-10 (2011) (citing cases).  The law developed under this heading is complicated and presents a range of issues; but, where as here the legal offense--here, conspiracy to possess with intent to distribute--is the same for the larger and smaller conspiracy, id., the conviction is safe if the jury could rationally conclude from the evidence that the relationship among the participants was that of the single conspiracy charged.

Here, to find the single conspiracy charged, the jury had to infer from the acts and statements of the witnesses a single ongoing "agreement" that embraced Jones and other co-conspirators. It would be enough, under the criteria developed by the courts, United States v. Niemi, 579 F.3d 123, 127 (1st Cir. 2009), cert. denied, 130 S. Ct. 1912 (2010), for the jury to find that the local co-conspirators were aware generally that a common, large scale conspiracy existed with Jones at the center, that its operation

---

[1]These include, importantly, much more potent use of the co-conspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E); a greater opportunity to try a greater number of defendants in one trial; and greater scope for imposing liability on a defendant for substantive offenses (e.g., assaults or murders) committed by another defendant.  See Developments in the Law--Criminal Conspiracy, 92 Harv. L. Rev. 920, 991 (1959).

depended on the co-operation of all, and that the co-conspirators knowingly associated with and adhered to it.

Some of the evidence pointed to by the government--for example, that the modus operandi for the various transactions was similar--is as consistent with a multiple conspiracy story as with a single conspiracy; and Jones' brief ably argues that in a small community the fact that the alleged co-conspirators tended to know each other does not prove a single conspiracy. But evidence also indicated that various co-conspirators knew that Jones was supplying others among them, that some of the co-conspirators would retrieve drugs or money from each other at Jones' direction, and Jones' ability to maintain a flow of drugs was arguably enhanced by his control of the larger enterprise.

This is the classic model of the hub-and-spoke conspiracy, Niemi, 579 F.3d at 127, and, although the present facts are not the most powerful example one can imagine for the single conspiracy finding, this is a factual issue left to the jury in close cases. See United States v. Mangual-Santiago, 562 F.3d 411, 421 (1st Cir.), cert. denied, 130 S. Ct. 293 (2009). Moreover, the concern about injustice is, for obvious reasons, greater when the defendant is a putative small fry member rather than the demonstrated head of an enterprise. Cf. United States v. Richardson, 532 F.3d 1279, 1288 (11th Cir. 2008), cert. denied, 555 U.S. 1120 (2009).

The remaining issues concerning Jones' conviction are readily dispatched. Jones points to multiple statements in the prosecutor's closing argument that he says created a threat of unfair prejudice because they injected extrinsic facts and potentially confused the jurors about the burden of proof and elements of the crime. Specifically, Jones highlights the following statements:

> -Following a summary of the evidence of Jones' travel between Maine and Georgia: "Who travels like this? Why does one travel like this? You know who and you know why."

> -Referencing a photograph of Jones shown at trial: "[W]e have the defendant holding a pot, and you all know what pots are used for. Not pressure washing."

> -At the end of the closing: "I'm told the word verdict comes from two Latin words, veritas, which means truth, and dictum, which means speak. The Government asks that you come back and you speak the truth about this man and you return a verdict of guilty."

> -In rebuttal responding to Jones' counsel's closing argument that the witnesses against Jones were inherently unreliable: "The defendant chose the witnesses in this case, not the Government."

> -In rebuttal responding to Jones' counsel's closing argument that the government had presented no hard evidence of Jones possessing a gun or drugs: "This is a drug case; there are no drugs. We don't need drugs; we need evidence."

As Jones never objected to any of these statements, his claim would ordinarily be reviewed only for plain error, United

States v. <u>Kasenge</u>, 660 F.3d 537, 541 (1st Cir. 2011), <u>cert. denied</u>, 2012 WL 261190 (Feb. 27, 2012), but in this instance none of the statements constituted error at all.  The first two statements, referencing Jones' travel and the photograph of him, simply asked the jury to draw reasonable inferences from evidence presented at trial and their own experiences, which is entirely permissible. <u>United States</u> v. <u>Vanvliet</u>, 542 F.3d 259, 271 (1st Cir. 2008).

The last two statements made in the prosecutor's rebuttal, stating that Jones "chose the witnesses" and that there was no need to present drug evidence, are also unobjectionable. Both were in direct response to arguments raised by Jones' counsel in his own closing, discrediting the co-conspirators' motives and asking "why are there no drugs, why is there no gun."  And the statement about drugs was not a misstatement of law--the jury was entitled to convict Jones of conspiracy without being offered proof that drugs were seized from Jones.

Finally, the prosecutor's entreaty to the jury that it "speak the truth" and convict Jones might seem close to <u>United States</u> v. <u>Andújar-Basco</u>, 488 F.3d 549, 560-61 (1st Cir. 2007), and like cases where courts found improper exhortations to the jury "to do its duty" and find the defendant guilty. But while we are not endorsing the flourish used here, asking the jury to deliver an honest verdict is proper and it is inherently the prosecutor's position that this test entails conviction.

-9-

Jones also faults the judge's instruction to the jury on reasonable doubt, which read as follows:

> [I]f after a fair and impartial consideration of all of the evidence you are satisfied beyond a reasonable doubt as to Mr. Jones' guilt on the offense charged in the indictment, you should vote to convict him. A reasonable doubt does not mean a mere possibility that the defendant may not be guilty, nor does it mean a fanciful or imaginary doubt nor one based on groundless conjecture. It means a doubt based upon reason.

Jones says this instruction was "ambiguous" and should have mentioned the government's heavy burden.

There was no objection to the instruction which is thus reviewed only for plain error, Fed. R. Crim. P. 30(d); and, strictly speaking, the charge was not error at all: the "beyond a reasonable doubt" language is the required rubric and the "fanciful or imaginary doubt" and "doubt based on reason" counterpoise is classic language. E.g., United States v. Gerhard, 615 F.3d 7, 28 (1st Cir. 2010), cert. denied, 131 S. Ct. 1536, and cert. denied, 132 S. Ct. 288 (2011). The quoted paragraph is laconic but the judge was not required to define reasonable doubt at all. United States v. Fields, 660 F.3d 95, 96-97 (1st Cir. 2011).

That said, more defendant-friendly language is often added (such as the "heavy burden" set forth in United States v. Cleveland, 106 F.3d 1056, 1062-63 (1st Cir. 1997), aff'd, 524 U.S. 125 (1998)) or by instead beginning the definition with an "unless"

-10-

formulation rather than an "if," e.g., United States v. Poulsen, 655 F.3d 492, 502 n.2 (6th Cir. 2011).  However, the judge had already told the jury earlier in the instructions  that "you are not to convict [Jones] unless you are persuaded of his guilt beyond a reasonable doubt" and a juror could hardly doubt that this is self-evidently a heavy burden.

Two procedural objections remain.  First, Jones objects that he was not present when counsel met with the judge to consider a response to a jury request for re-instruction on one issue (quantity of drugs over the course of the conspiracy) and for physical calendars for the years 2006 through 2008.  Jones says that his absence, which no counsel requested, violated his right to be present at "every trial stage, including jury impanelment and the return of the verdict."  Fed. R. Crim. P. 43(a)(2).

Rule 43 carves out an explicit exception for "a conference or hearing on a question of law,"  Fed. R. Crim. P. 43(b)(3), the rationale surely being that a defendant's presence on a legal issue (whether at sidebar or in chambers) is not going to aid the defense counsel in making such arguments. See Wright et al., Federal Practice and Procedure: Criminal 3d § 721.1 (2004); cf. United States v. Lampton, 158 F.3d 251, 255 (5th Cir. 1998), cert. denied, 525 U.S. 1183 (1999).  Both the re-instruction and the question of what materials a jury may consult are legal questions and fall within the exception.  See United States v.

-11-

<u>Gonzalez</u>, 596 F.3d 1228, 1243 (10th Cir.), <u>cert. denied</u>, 131 S. Ct. 172 (2010).

As for the second procedural objection, the day <u>after</u> the jury rendered its verdict, the U.S. attorney informed the district judge that an officer in the Lewiston Police Department had received a call from a juror that morning. The judge then held a conference at which the police officer, the prosecutor, and Jones' counsel were present. Although other Lewiston officers had testified at the trial, the one who received the call from the juror said he knew nothing about Jones' case prior to the call.

The officer in question stated that the telephoning juror was known to him from high school but was not currently a friend; that in the last few years the officer had seen the juror only a couple of times around town; that the juror did not say what had happened in the jury deliberations but engaged in "small talk" centering around the juror's complaint about "the caliber" of the witnesses at Jones' trial and that the juror "basically talked about all the witnesses and how . . . [the police] deal with that in Lewiston."

At the close of the hearing, defense counsel asked that the juror be called to clarify his relationship with the Lewiston Police Department and to expose any potential bias. The judge declined to do so, and Jones now says this was error. Jones' preserved claim of error on appeal is reviewed for abuse of

discretion, <u>United States</u> v. <u>Mikutowicz</u>, 365 F.3d 65, 74 (1st Cir. 2004), but there is no indication of any such abuse.

Having been discharged, the juror was free--absent valid restriction and whether wisely or not--to talk with whomever he chose about the trial. <u>See</u> <u>In re Globe Newspaper Co.</u>, 920 F.2d 88 (1st Cir. 1990). Had his remarks suggested impropriety in the jury deliberations or juror bias, the district judge might have been required to pursue the matter further, <u>see</u> <u>United States</u> v. <u>Villar</u>, 586 F.3d 76 (1st Cir. 2009), but the officer's report suggested neither a flaw in the jury deliberations nor any reason to doubt the officer's report. There was no abuse of discretion in declining to order a further hearing on the matter.

This brings us to Jones' challenges to his sentence--for which further background is helpful. The pre-sentence report estimated that Jones was responsible for the distribution in the Lewiston area in Maine of just over a kilogram of cocaine base, over a kilogram of cocaine, and twenty-five grams of ecstasy. Because of his criminal history, Jones fell in the top category and combined with his drug quantity, use of a firearm, leadership role and false testimony at trial, this equated to a guideline sentence of 360 months to life.

However, under 21 U.S.C. § 841(b)(1)(A), a defendant who has the requisite drug quantity and "two or more prior convictions for a felony drug offense" must be sentenced to life in prison. It

is a condition of such an enhanced mandatory sentence that--"before trial, or before entry of a plea of guilty"--the U.S. Attorney file an information with the court and serve on the defendant or his counsel an information identifying the prior convictions to be relied upon.  Id. § 851(a)(1).

Here, the jury was selected in proceedings before the magistrate judge on April 5, 2010, and the opening arguments and the first witnesses were presented on April 12, 2010, before the district judge.  The section 851 information was apparently filed only minutes before the opening arguments.  "Trial," as used in section 851, has been read by this and other courts to include jury selection, Prou, 199 F.3d at 48.  Jones concedes no objection was made but invokes plain error.

That Jones made "no objection" is an understatement.  On April 5, 2010, expressly in aid of plea bargaining, Jones explicitly waived any objection to the timing of a section 851 information "provided that such notice is filed on or before April 11, 2010."  Such waivers are permitted, Prou, 199 F.3d at 47.  Because April 11, 2010, turned out to be a Sunday, the judge granted the request of both sides made on April 8 to extend the time for filing until 8:30 a.m. on April 12, and Jones has not contested the government's assertion that it was filed at 8:17 in the morning.  That resolves the matter.

What remains is Jones' fully preserved claim that a life sentence--or at least a mandatory life sentence--for his present conviction is so harsh as to violate the Eighth Amendment prohibition on cruel and unusual punishment. Jones stresses that the prior drug felonies identified in the information were three state court convictions for simple possession of drugs, one of which he asserts was for a quantity of marijuana that would not even be a crime in Maine, although the offense was committed in Georgia and did there constitute a felony.[2]

Taken by itself, a life sentence for a 30 year old defendant, based on a first time drug distribution conviction, looks on its face like a very severe sentence. We are prepared to assume that--despite the criminal history including possession offenses--the district judge might have given a lesser sentence absent the mandatory minimum even though the guideline range as computed was 30 years to life. But there are two difficulties with Jones' constitutional attack.

The first is that the Supreme Court has upheld as constitutional sentences that look equivalently severe. Harmelin v. Michigan, 501 U.S. 957 (1991) (upholding a sentence of life in

---

[2]A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44) (2006).

prison without parole for possession of more than 650 grams of cocaine).  See also Ewing v. California, 538 U.S. 11 (2003) (upholding California's "three strikes" law and the imposition of a 25 years to life sentence); Hutto v. Davis, 454 U.S. 370 (1982) (upholding a sentence of forty years for possession and distribution of nine ounces of marijuana).  Cf. United States v. Kratsas, 45 F.3d 63, 68 & n.3 (4th Cir. 1995) (upholding mandatory life sentence).

More recently, as Jones points out, the Supreme Court held that a life sentence without parole for non-homicide offenses imposed on juvenile offenders violated the Eighth Amendment. Graham v. Florida, 130 S. Ct. 2011 (2010).  But the Court there relied heavily on a "national consensus" against such sentences and the "lessened culpability" of juveniles.  Id. at 2026.  Jones was not close to being a juvenile at the time of his present offense (although he was at the time of the prior possession offenses).

Second, Jones's situation is considerably less attractive than the short-hand description of him as a first time distributor with some older possession offenses.  The evidence presented at trial showed that he ran a significant distribution network involving a number of people over several years, possessed guns in connection with this continuing crime, seemingly was prepared to murder informants, and had enough prior convictions to place him in the top criminal history bracket.

Further, all this would not have triggered the mandatory minimums had not the quantity of drugs he distributed exceeded the highest of the several statutory thresholds; one pair, at the time of Jones' crime, was five kilograms of cocaine or 50 grams of cocaine base. 21 U.S.C. § 841 (2006). Cocaine and ecstasy aside, a full kilo of crack was attributed to Jones in the pre-sentencing report, so he would most likely have met the threshold even under the later revised crack threshold of 280 grams, a change to which Jones makes passing reference but no developed argument.[3]

Some regard American drug policy as now in disarray; and even among the many who regard illegal drugs as a curse of epic proportions, the mandatory minimum sentences often cause disquiet among judges, lawyers and others. But within extremely broad limits, Congress--which unlike the judiciary is popularly elected-- sets both sentencing policy and the prescribed range of sentences for federal drug crimes; and the prosecution also had discretion in this case to not seek the mandatory sentence. The sentence in this case does not exceed those limits.

**Affirmed.**

---

[3]The amount was changed to 280 grams as of August 3, 2010. Fair Sentencing Act of 2010, Pub. L. 111-220 § 2(a), 124 Stat. 2372, 2372 (Aug. 3, 2010). Jones was sentenced on July 21, 2010 and the relevant conduct occurred between 2005 and 2008, so the new law does not apply. Cf. United States v. Douglas, 644 F.3d 39 (1st Cir. 2011) (Fair Sentencing Act applies to a defendant who pleaded guilty prior to enactment but was sentenced afterwards).